IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


JASON F. BRIDGES,

          Petitioner,

v.                                    CIVIL ACTION NO. 1:05CV96
                                      CRIMINAL ACTION NO. 1:05CR80(1)
                                              (Judge Keeley)


UNITED STATES OF AMERICA,

          Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On July 13, 2007, pursuant to 28 U.S.C. § 2255, pro se
petitioner Jason F. Bridges ("Bridges"), filed a petition to
vacate, set aside, or correct his sentence.  The Court referred the
petition to Magistrate Judge John S. Kaull for initial review and
report and recommendation in accordance with Local Rule of Prisoner
Litigation Procedure 83.15, et seq., and Standing Order No. 4.

In his § 2255 petition, Bridges alleges that his counsel was
ineffective because he:

    (a)  failed to properly or thoroughly investigate the
         case and interview the witnesses,

    (b)  failed to challenge the fact that the government
         twice charged him for the same drugs,

    (c)  failed to challenge where the government "placed
         [him] at places and times during these crimes, at
         and/or during the 'discovery' in this case,"

    (d)  failed to correctly and definitively outline and
         explain the full consequences of the crime, the
         charges and the penalty, but instead, told the
         petitioner that he was likely to receive a very
         light and lenient sentence

    (e)   failed to file a bond reduction motion and a motion
          to suppress evidence as requested, and

    (f)   advised petitioner to sign a waiver of his speedy
          trial rights.

Following an initial review, Magistrate Judge Kaull issued a Report and Recommendation ("R&R") on October 19, 2007, recommending that Bridges' petition be denied and dismissed with prejudice. The Court subsequently granted Bridges' motion to extend the time to file objections, and on January 7, 2008, Bridges timely filed his objections to the R&R. For the reasons that follow, the Court **ADOPTS** Magistrate Judge Kaull's R&R and **DISMISSES** the petition.

**I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

    **A. Plea Agreement and Hearing**

On June 7, 2006, Bridges pled guilty, through a binding plea agreement, to possession with intent to distribute 1,495 grams of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1). In the plea agreement, Bridges stipulated to a total drug relevant conduct of 16,801.92 grams of cocaine hydrochloride, 28.5 grams of cocaine base, and 9,435 grams of marijuana, for a total marijuana equivalency of 4,405.15 kilograms. The parties agreed that the Court should sentence Bridges to a fourteen year term of incarceration pursuant to Federal Rule of Criminal Procedure

ORDER ADOPTING REPORT AND RECOMMENDATIONS

11(c)(1)(C).[1] In addition, Bridges agreed to waive his right to

appeal or collaterally attack his sentence. The waiver read as

follows:

> 10. Defendant is aware that Title 18, United States Code,
> Section 3742 affords a defendant the right to appeal the
> sentence imposed. Acknowledging all this, and in exchange
> for the concessions heretofore made by the United States
> in this plea agreement, Defendant knowingly and
> voluntarily waives the right to appeal any sentence which
> is within the maximum provided in the statute of
> conviction or in the manner in which that sentence was
> determined on any ground whatever, including those
> grounds set forth in Title 18, United States Code,
> Section 3742. Defendant also waives his right to
> challenge his sentence or the manner in which it was
> determined in any collateral attack, including but not
> limited to, a motion brought under Title 28, United
> States Code, Section 2255 (habeas corpus).

At the Rule 11 hearing, the Court questioned Bridges regarding

his ability to knowingly and competently enter into the plea

agreement. Bridges declared that he was a 24 year old high school

graduate with nearly enough credit for an associate's degree. He

denied having any problems with his hearing or eyesight that would

prevent him from following the proceedings and denied that he was

under the influence of any alcohol, illegal drugs, or prescription

medications.

---

[1]     Federal Rule of Criminal Procedure 11(c)(1)(C) permits the parties to agree
to a specific sentence in a plea agreement and, if the plea agreement is accepted
by the Court, the Court is bound to impose the agreed upon sentence.

ORDER ADOPTING REPORT AND RECOMMENDATIONS

During the hearing, the Court questioned Bridges at length regarding his understanding of the plea agreement, specifically addressing the stipulated amount of relevant conduct and the large quantity of drugs involved in the case. Bridges, however, did not object to the stipulated amount of relevant conduct. The Court also discussed with him the mutually agreed to 14-year sentence, well below the statutory maximum of 40 years.

The Court then questioned Bridges regarding his understanding of his waiver of his appellate and collateral attack rights. Bridges stated that he understood this waiver provision. The Court then explained the process it must go through, even with an agreed upon sentence, to determine Bridges' sentencing guidelines. Bridges confirmed that he understood the process. Afterward, Bridges was again asked if he understood that, by pleading guilty, he would be agreeing to give up his appellate rights, and he again confirmed that he did understand. Ultimately, his attorney stated his belief that Bridges understood the full consequences of pleading guilty. Bridges then pled guilty, and the following exchange occurred:

> **The Court:** All right. Thank you. You may be seated. Did anybody threaten you or force you into this plea, Mr. Bridges?
>
> **The Defendant:** No ma'am.

> **The Court:** Has anybody predicted the exact sentence that you're going to receive and the answer to that one is yes, because you're not going to plea unless you get a fourteen-year sentence, right?
>
> **The Defendant:** Yes, Your Honor.
>
> **The Court:** All right. And do you believe that Mr. Dyer has adequately represented you in this matter?
>
> **The Defendant:** Yes, Your Honor.
>
> **The Court:** Has he left anything undone that you think he should have undertaken on your behalf?
>
> **The Defendant:** No ma'am.

Transcript of Plea Hearing ("P. Trans") at 36.

Thereafter, the Court found (1) that Bridges was competent and capable of entering an informed plea, (2) that his plea was freely and voluntarily made, and (3) that he was aware of the consequences of his plea. The Court, however, deferred accepting both the plea and the plea agreement until sentencing, due to the parties' express agreement as to Bridges' sentence.

**B. Sentencing**

The Court conducted a sentencing hearing on October 3, 2006. After placing Bridges under oath, the following exchange occurred:

> **The Court:** All right. Have you looked over the presentence report?
>
> **The Defendant:** Yes, Your Honor.

**The Court:** And, did you and Mr. Dyer have an opportunity to discuss the information in the presentence report?

**The Defendant:** Yes ma'am.

**The Court:** All right. Now, he did not file any objections to the information in the presentence report and I am assuming that before that happened, you and he discussed that?

**The Defendant:** Yes ma'am.

Transcript of Sentencing Hearing ("S. Trans.") at 5-6.

At that point, the Court accepted the binding plea agreement. It reasoned that, given the quantity and composition of the drugs involved, a sentence of fourteen years neither overstated nor understated the seriousness of the offense. Next, the Court evaluated the § 3553(a) sentencing factors and concluded that fourteen years of incarceration was a reasonable sentence. After calculating Bridges' guideline range and considering all the statutory factors, the Court sentenced Bridges to 168 months (fourteen years) of imprisonment and four years of supervised release.

### C. The Magistrate Judge's Report and Recommendation

In his R&R, Magistrate Judge Kaull concluded that Bridges had validly waived his right to collaterally attack his sentence, and accordingly, recommended that the Court deny Bridges' petition. Specifically, Magistrate Judge Kaull found that a waiver of

appellate rights in a valid plea agreement is enforceable if the waiver is knowing and voluntary. See United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994). He noted that such a waiver also may extend to the right to collaterally attack a sentence, so long as it is knowing and voluntary. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Finally, he found that valid waivers of appellate rights preclude claims of ineffective assistance of counsel when the acts complained of occurred prior to the plea hearing. Id. at 732.

Because Bridges knowingly and intelligently waived his appellate and collateral attack rights, and because all of his claims involve actions or events prior to the plea hearing the Magistrate Judge found that they were barred by the valid plea agreement waiver. Accordingly, he recommended that the Court deny Bridges' § 2255 motion and dismiss his case with prejudice from the Court's docket.

### D. Bridges' Objections

On January 7, 2008, Bridges filed objections to the R&R and requested that the Court conduct an evidentiary hearing. In his objections, he restates his original claims of ineffective assistance of counsel and raises two additional grounds for relief. First, he alleges that his guilty plea was not knowing and

7

voluntary, and second, he asserts that he received ineffective assistance of counsel at sentencing.

> I.  *Ground One: Original Ineffective Assistance of Counsel Claims*

In his objections to the R&R, Bridges simply reiterates that his counsel was ineffective because his counsel (1) failed to investigate and present available evidence to support his alibi; (2) failed to thoroughly investigate the case and form a defense trial strategy once he expressed a desire to plead guilty; (3) failed to challenge the fact that the government twice charged him for the same drugs; (4) failed to challenge where the government "placed the petitioner at places and times of these crimes during the discovery of this case;" (5) failed to file pre-trial motions to suppress questionable evidence; and (6) "coerced" him into waiving his speedy trial rights.

> ii.  *Ground Two: Validity of Plea and § 2255 Waiver*

Liberally construed, Bridges' objections also allege that his guilty plea, and thus his waiver of collateral-attack rights, was unknowing and involuntary because (1) his counsel "coerced, tricked and bamboozled" him into pleading guilty and waiving his appeal rights; (2) his counsel provided misleading advice with respect to his right to a jury trial and the government's ability to establish relevant conduct; (3) his counsel promised him that the plea

agreement was just a formality and he would be able to seek redress through a habeas petition; (4) he had no understanding of the legal process; (5) his counsel "encouraged and coerced" him to agree to the terms of the plea agreement that stipulated relevant conduct and "to state falsely" that he understood those terms when questioned by the Court; and (6) his counsel failed to correctly and definitively explain the full consequences of the crime, charges and penalties that he faced, and instead promised him that he would receive a very lenient sentence.

### iii. Ground Three: Ineffective Assistance of Counsel at Sentencing

Finally, Bridges asserts that his counsel was ineffective at sentencing because he (1) advised Bridges not to ask any questions and to falsely state that he understood the sentencing guidelines, penalties for the offense and relevant drug conduct during the sentencing proceedings; (2) failed to advocate for "the standard three point downward departure for the acceptance of responsibility;" (3) failed to fully investigate and object to the drug quantity and composition used to determine relevant conduct in the PSR; and (4) failed to object when he was charged "with conspiracy to distribute at least 5 kilograms but was sentenced at a level for 15 kilograms or more."

## II.   STANDARD OF REVIEW

A district court's review of objections to a Magistrate Judge's R&R is de novo. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[A]s part of its obligation to determine de novo any issue to which proper objections is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992).

## III. APPLICABLE LAW

A criminal defendant may waive his right to collaterally attack his conviction and sentence, so long as the waiver is knowing and voluntary. Lemaster, 403 F.3d at 220. Collateral attack waivers are examined under a two-part analysis in which both the validity and the scope of the waiver are determined. See e.g., Attar, 38 F.3d at 731 (holding that a waiver will be enforced if the waiver is valid and the claim raised on appeal is within the scope of the waiver).

### A.   Validity of Waiver

When evaluating the validity of a plea and § 2255 waiver, the Court must focus on the petitioner's sworn statements during the plea hearing. The Fourth Circuit has held that "a defendant's

10

solemn declarations in open court affirming [a plea] agreement... carry a strong presumption of verity," and, therefore, "present[] a formidable barrier in any subsequent collateral proceedings." Lemaster, 403 F.3d at 221, quoting United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (internal quotations omitted). Thus, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false'." Lemaster, 403 F.3d at 221 (quoting Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)). When a district court finds that the petitioner's § 2255 allegations contradict the sworn statements made at a Rule 11 plea hearing, it may dismiss the § 2255 petition without conducting an evidentiary hearing. Lemaster, 403 F.3d at 222 (internal quotations and citations omitted).

### B. Scope of the Waiver

Where the waiver is valid, the Court must next determine whether the claims giving rise to the petition are included within the scope of the waiver. The Fourth Circuit has identified a narrow class of claims that fall outside the scope of a valid waiver of direct appeal rights: (1) claims that the sentence was imposed in excess of the maximum penalty provided by law, (2) claims that the

ORDER ADOPTING REPORT AND RECOMMENDATIONS
_____

sentence was based on a constitutionally impermissible factor such

as race, or (3) claims that the defendant was deprived of effective

assistance of counsel at a proceeding following the entry of the

waiver, such as at sentencing.[2] Attar, 38 F.3d at 732; United

States v. Marin, 961 F.2d 493. 496 (4th Cir. 1992); see also United

States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005).

Accordingly, claims of ineffective assistance of counsel are

barred by a valid waiver and may be dismissed if the claims

occurred prior to the defendant entering his guilty plea. Claims of

ineffective assistance of counsel arising after the entry of the

guilty plea, however, are not barred by a valid waiver and must be

reviewed. Lemaster, 403 F.3d at 220.

## C.    Ineffective Assistance of Counsel

To prove that counsel's assistance was so defective as to

require reversal, a petitioner must meet the two-prong standard

articulated in Strickland v. Washington, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth

_____

[2]     In Lemaster, the Fourth Circuit saw no reason to distinguish between
waivers of direct appeal rights and waivers of collateral attack rights. 403 F.3d
at 220. The Court implicitly acknowledged that the narrow class of claims that
fall outside the scope of a valid waiver of direct appeal rights would also be
considered outside the scope of a valid waiver of collateral attack rights. Id.
at n. 2.

> Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose
> result is reliable.

Id. at 687.

The first prong relates to attorney performance. Here, the question is whether the attorney's performance fell below an objective standard of reasonableness. Id. at 687-89. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of competence demanded from attorneys. Id. at 689. The court may not second-guess counsel's decisions which, given the totality of the circumstances, "might be considered sound trial strategy." Id. (quoting Michel v. State of La., 350 U.S. 91, 101 (1955)).

To satisfy the second prong, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694-95. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694. If it is clear that a petitioner has not satisfied one prong of the Strickland test, the Court need not analyze whether he has satisfied the other prong. Id. at 697.

Furthermore, "[i]n order to obtain an evidentiary hearing on ineffective assistance claim – or, for that matter, on any claim – a habeas petitioner must come forward with some evidence that the claim might have merit." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), cert. denied, 507 U.S. 923 (1993), abrogation on other grounds recognized, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Bald assertions amounting to nothing more than conclusions provide no basis for an evidentiary hearing. Id.

## IV. DISCUSSION

### A. Bridges' § 2255 waiver is valid.

When judged solely by the terms of his plea agreement, it is clear that Bridges agreed to waive his right to collaterally attack his sentence if the sentence fell within the "maximum provided in the statute of conviction." By signing the plea agreement, he affirmed that he had carefully reviewed the agreement with his attorney and that he fully understood its terms. Here, Bridges claims that his plea was unknowing and involuntary and thus invalid because:

(1) his counsel "coerced, tricked and bamboozled" him into pleading guilty and waiving his appellate and collateral attack rights;

(2) his counsel provided misleading advice with respect to his right to a jury trial and the government's ability to establish relevant conduct;

(3)   his counsel assured and promised him that the plea
      agreement was just a formality and he would be able
      to seek redress through a habeas petition;

(4)   he had no understanding of the legal process;

(5)   his counsel "encouraged and coerced" him to agree
      to the terms of the plea agreement that stipulated
      relevant conduct and "to state falsely" that he
      understood those terms when questioned by the
      Court; and

(6)   his counsel failed to correctly and definitively
      explain the full consequences of the crime, charges
      and penalties that he faced and instead promised
      him that he would receive a very lenient sentence.

The record, however, clearly establishes otherwise. Bridges
knowingly and voluntarily entered a valid guilty plea and waived
his right to collaterally attack his sentence. Before accepting
Bridges' guilty plea, the Court engaged in an extensive colloquy
with him. At the beginning of the hearing, the Court asked the
Government, through its attorney, Assistant United States Attorney
Thomas Mucklow, to summarize the terms of the plea agreement. As
part of that summary, Mr. Mucklow stated:

      The defendant has also waived his right to challenge the
      sentence or the manner in which it was determined in any
      collateral attack, including but not limited to, motions
      brought under Title 28, United States Code, Section 2255.

P. Trans. at 10. After Mr. Mucklow finished his summary, the Court
then engaged in the following exchange with Bridges:

ORDER ADOPTING REPORT AND RECOMMENDATIONS

> **The Court:** First of all, you heard Mr. Mucklow's summary
> of the terms of the plea agreement. Do you understand and
> agree with those terms?
>
> **The Defendant:** Yes ma'am.
>
> **The Court:** And has anything else been agreed to, either
> orally or in another writing, that isn't contained in
> this plea agreement?
>
> **The Defendant:** No, Your Honor.

P. Trans. at 12-13. Next, the Court advised Bridges of the

statutory maximum sentence, maximum fine, and supervised release

for the count to which he intended to plead guilty. It also

reviewed the impact of the plea agreement on Bridges' appellate and

collateral attack rights.

> **The Court:** Okay. Now do you understand that in some
> circumstances you and the United States would have the
> right to appeal the sentence that you receive in this
> Federal Court but under the terms of your plea agreement
> you do not? If I sentence you to fourteen years then you
> do not have to - have the right to appeal?
>
> **The Defendant:** Yes ma'am.

P. Trans. at 26. Moreover, after Bridges plead guilty, the

following exchange occurred:

> **The Court:** All right. Thank you. You may be seated. Did
> anybody threaten you or force you into this plea, Mr.
> Bridges?
>
> **The Defendant:** No ma'am.
>
> **The Court:** Has anybody predicted the exact sentence that
> you're going to receive and the answer to that one is

yes, because you're not going to plead unless you get a
fourteen-year sentence, right?

**The Defendant:** Yes, Your Honor.

**The Court:** All right. And do you believe that Mr. Dyer
has adequately represented you in this matter?

**The Defendant:** Yes, Your Honor.

**The Court:** Has he left anything undone that you think he
should have undertaken on your behalf?

**The Defendant:** No ma'am.

Trans. at 36. At the conclusion of the plea hearing, the Court
determined that Bridges was "competent and capable" of entering an
informed plea, that his plea was "freely and voluntarily" made, and
that he was "aware of the consequences" of the plea. P. Trans. at
37.

Based on this record, this Court concludes that Bridges'
allegations in his § 2255 motion are "palpably incredible" and
"patently frivolous or false" because they directly contradict his
sworn testimony at his plea hearing. See Lemaster, 403 F.3d at 221.
The Court, therefore, finds that Bridges' guilty plea and waiver of
his right to bring a collateral attack under § 2255 were knowing
and voluntary. Accordingly, it **DISMISSES** these claims and finds no
need for an evidentiary hearing.

**B.    Bridges' claims of ineffective assistance of counsel
       arising prior to entry of his guilty plea are barred by
       the waiver.**

Because Bridges' waiver of collateral attack rights is valid
and enforceable, Bridges' ineffective assistance of counsel claims
arising prior to the plea agreement are barred.  In Ground One of
his § 2255 petition, Bridges alleges that he received ineffective
because his counsel:

(1)   failed    to    investigate    and    present    available
      evidence to support his alibi;

(2)   failed to thoroughly investigate the case and form
      a defense trial strategy once he expressed a desire
      to plead guilty;

(3)   failed to challenge the fact that the government
      twice charged him for the same drugs;

(4)   failed to challenge where the government "placed
      the petitioner at places and times of these crimes
      during the discovery of this case;"

(5)   failed    to    file    pre-trial    motions    to    suppress
      questionable evidence;

(6)   "coerced" him into waiving his speedy trial rights.

These claims of ineffective assistance of counsel fall within
the scope of the waiver and arose prior to sentencing. Therefore,
Bridges' claims in Ground One are barred by his valid waiver.
Accordingly, the Court **ADOPTS** the Magistrate Judge's R&R as to
Bridges' claims of ineffective assistance of counsel prior to

18

sentencing and **DISMISSES** those claims with prejudice in light of

Bridges' knowing and voluntary waiver.

### C.   Ineffective Assistance of Counsel at Sentencing

Finally, in Ground Three, Bridges argues that his counsel was

constitutionally ineffective at sentencing because he:

> (1)   advised Bridges to not ask any question and to falsely state that he understood the sentencing guidelines, penalties for the offense, and relevant drug conduct during the proceedings;
>
> (2)   failed to advocate for "the standard three point downward departure for the acceptance of responsibility;"
>
> (3)   failed to fully investigate and object to the drug quantity and composition used to determine relevant conduct in the PSR; and
>
> (4)   failed to object when the Court sentenced him for 15 kilograms or more when he was only charged with conspiracy to distribute at least 5 kilograms.

For the reasons that follow, however, the Court concludes that

Bridges' claims of ineffective assistance of counsel at

sentencing lack merit.

### i.   *Counsel's Advice*

Bridges contends that his attorney was ineffective in advising

him not to ask any questions and to falsely state that he

understood the sentencing guidelines, penalties for the offense, and relevant drug conduct during the sentencing proceedings. Bridges, however, fails to offer even a scintilla of evidence to support this bare assertion. Even assuming Bridges' attorney made this representation, it did not prejudice him, because this Court informed Bridges at his sentencing hearing that he was free to ask questions.

> **The Court:** You're also free to ask question and to consult with Mr. Dyer throughout this hearing. You can also ask me questions. I don't want to proceed if you are uncertain or confused about what is going on? All right?

> **The Defendant:** Yes, Your Honor.

S. Trans. at 4.

Before accepting the binding plea agreement, the Court went through the applicable sentencing factors, relevant conduct, and penalties of the offense. At no time during this proceeding did Bridges ask a question or indicate that he did not understand. Moreover, during the Rule 11 hearing, the Court had extensively outlined the process for calculating the sentencing guidelines, penalties, and relevant drug conduct, after which Bridges assured the Court that he understood the process and wished to proceed with his guilty plea.

Importantly, Bridges was not sentenced pursuant to the sentencing guidelines, his relevant conduct, or the penalties for his offense but rather under the terms of a binding plea agreement. Under Federal Rule of Criminal Procedure 11(c)(1)(C), if parties reach a binding plea agreement specifying an exact sentence and the Court accepts that agreement, then the Court is bound by the terms of the agreement. So even if Bridges did not understand the sentencing guidelines, his relevant conduct, or the penalties for his offense, this misunderstanding did not prejudice him, because these issues did not determine the outcome of his sentence.

*ii. Downward Departure*

Bridges further contends that his attorney provided ineffective assistance because he failed to argue that a three point downward departure was warranted for acceptance of responsibility. This claim, however, also lacks merit for the parties' binding plea agreement for a sentence of fourteen years makes such a reduction irrelevant. On several occasions during the plea hearing, the Court ensured that Bridges understood the ramifications of his binding plea:

> **The Court:** All right. Now let me point out to you that this plea agreement contains, at paragraph seven, a very important provision and that is a provision that says a specific term of imprisonment is being agreed to by the parties; that's fourteen years of imprisonment; that

there would be no fine and that the term of supervised release would be four years. That's pursuant to a provision of the Federal Rules of Criminal Procedure that says as follows, and I want you to listen to this carefully, "that if the parties agree that a specific sentence or sentencing range is the appropriate disposition of the case or that a particular provision of the Sentencing Guidelines or policy statement or a sentencing factor does or does not apply, such recommendation or request binds the Court once the Court accepts the plea agreement." So if I accept the plea agreement in this case, then I will be bound to impose a sentence of fourteen years, which is what you and the Government have agreed to. Do you understand that?

**The Defendant:** Yes ma'am.

P. Trans. at 13. The Court again explained the binding nature of

the plea agreement before Bridges entered his plea:

**The Court:** Now this plea is for a fourteen year sentence, no fine and four years of supervised release but, if you look at paragraph two of the plea agreement, I just want to make sure that you understand that the maximum penalty is forty years and the minimum penalty is five years. So under the statute for Count Two, you're bound by a minimum of five years and a maximum of fourteen years, but you all have agreed to fourteen years. Okay?
**The Defendant:** Yes ma'am.

P. Trans. at 21.

Because the plea agreement was binding, Bridges' attorney

could not have rendered ineffective assistance for failing to

advocate for a departure at the sentencing hearing. It is clear

from the record that Bridges understood the only sentence he could

possibly receive by pleading guilty was fourteen years. There is no

22

basis, therefore, to find Bridges' counsel's representation deficient since he is not required to introduce futile arguments. See Oken v. Corcoran, 220 F.3d 259, 269-70 (4th Cir. 2000)(holding that defendant's counsel was not ineffective for failing to make a futile objection at trial).

*iii. Relevant Conduct*

Similarly, Bridges alleges that his attorney's assistance was ineffective because he failed to challenge the amount of relevant conduct at sentencing. This claim fails to establish a Sixth Amendment violation. The Court thoroughly questioned Bridges regarding his understanding of the relevant conduct stipulation during his plea hearing:

> **The Court:** In the count of conviction, as I understand, the Count in other words to which you're going to plead guilty, there's a specific amount of cocaine hydrochloride that's alleged and that's fourteen hundred ninety-five grams, but in paragraph eight you are agreeing and stipulating that the relevant conduct or the drug weight that applies to you in this case is sixteen thousand eight hundred one point ninety-two grams of powder cocaine, twenty-eight point thirty-five grams of cocaine base, crack, and nine thousand four hundred fifty-three grams of marijuana and then all of that is converted—all of that is then converted to a total marijuana weight, because that's how the Guidelines convert drug weight when it gets up to a high level and it comes out to four thousand four hundred and five point one five kilograms or kilos of marijuana. That's a very large amount of drugs; that's why it's converted like that. Do you understand?

> **The Defendant:** Yes Your Honor.
>
> **The Court:** Okay. Do you have any questions about how that's set out?
>
> **The Defendant:** No, Your Honor.

P. Trans. at 14-15.

The Court also questioned Bridges regarding his counsel's representation during the plea hearing. When asked whether his attorney had adequately represented him, Bridges responded, "Yes, Your Honor." Id. at 36. Likewise, when asked whether his attorney had "left anything undone that you think he should have undertaken," Bridges responded, "No ma'am." Id.

Moreover, Bridges had the opportunity to express his concerns regarding the PSR at the sentencing hearing.

> **The Court:** All right. Have you looked over the presentence report?
>
> **The Defendant:** Yes, Your Honor.
>
> **The Court:** And, did you and Mr. Dyer have an opportunity to discuss the information in the presentence report?
>
> **The Defendant:** Yes ma'am.
>
> **The Court:** All right. Now, he did not file any objections to the information in the presentence report and I am assuming that before that happened, you and he discussed that?
>
> **The Defendant**: Yes ma'am.

S. Trans. at 4-5.

While Bridges may not have liked the amount of relevant conduct to which he had stipulated, there is absolutely no indication that he did not understand that stipulation. Furthermore, any failure by counsel to challenge the relevant conduct did not remotely prejudice Bridges since the terms of his binding plea agreement included a mandatory sentence of fourteen years, which was within his advisory guideline range and significantly below the statutory maximum for the offense of conviction. Once the Court accepted the plea agreement, it was bound by its terms and required to impose a sentence of fourteen years. Therefore, a change in the amount of relevant conduct would not have lowered his sentence. This claim of ineffective assistance of counsel is, therefore, without merit.

*iv. Sentence Discrepancy*

Finally, Bridges argues that he was charged with "conspiracy to distribute at least 5 kilograms but was sentenced at level for 15 kilograms or more." He claims that his counsel's failure to object to this discrepancy at sentencing amounted to ineffective assistance. This claim directly contradicts the record. First, Bridges pled guilty to Count 2 of the indictment, which charged him with possession with the intent to distribute approximately 1,495

grams (1.495 kilograms) of cocaine hydrochloride. In the plea
agreement, he stipulated to a total drug relevant conduct amount of
"16,801.92 grams of cocaine hydrochloride, 28.35 grams of cocaine
base, also known as crack, and 9.453 grams of marijuana, for a
total equivalency of 4,405.15 kilograms." During the Rule 11
hearing, these sections were summarized by the United States
Attorney and thoroughly discussed by the Court. When questioned as
to his understanding of these sections, Bridges assured the Court
he understood. Because Bridges fails to provide any evidence to
support the claim that he was charged with 5 kilograms and
sentenced for 15 kilograms or more, this allegation is conclusory
and without merit.

Morever, as already noted, Bridges' sentence was not based on
a guideline range but rather on an agreement to a binding fourteen
year sentence between the parties. As a result, even if a
discrepancy existed, counsel's failure to object to it had no
effect on Bridges' sentence because the advisory guidelines range
was not considered in imposing his sentence and his sentence did
not exceed the relevant statutory maximum of 40 years.

V.    **CONCLUSION**

After <u>de novo</u> consideration of the matters to which Bridges
has raised objections, this Court concludes that Bridges has failed

to present any valid grounds for habeas relief. Accordingly, the Court **ADOPTS** the Magistrate Judge's R&R in its entirety (crim. dckt. 93 and civ. dckt. 4)**, DENIES** Bridges' § 2255 motion (crim. dckt. 89 and civ. dckt. 1), and **DISMISSES WITH PREJUDICE** this case from the Court's docket.

It is so **ORDERED**.

**ORDER ADOPTING REPORT AND RECOMMENDATIONS**

The Clerk is directed to mail a copy of this order to counsel of record, the <u>pro</u> <u>se</u> petitioner, certified mail, return receipt requested, and the appropriate agencies.

DATED: July 28, 2008.

<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE